Michael J. Curley (SBN 25972)
Michael.Curley@quarles.com
**QUARLES & BRADY LLP**
One South Church Avenue, Suite 1800
Tucson, Arizona 85701
Telephone: 520-770-8700
Facsimile: 520-623-2418

Attorneys for Plaintiff Life Saver Pool Fence Systems, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA, PHOENIX

| | |
|---|---|
| LIFE SAVER POOL FENCE SYSTEMS, INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>POOL BARRIER OF ARIZONA, LLC, a limited liability company, and CHRISTOPHER AMATO, an individual<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**<br>**1. TRADEMARK INFRINGEMENT; AND**<br>**2. UNFAIR COMPETITION**<br>**3. CYBERSQUATTING** |

Plaintiff LIFE SAVER POOL FENCE SYSTEMS, INC. ("Life Saver" or "Plaintiff"), by and through its attorneys, allege against Defendants POOL BARRIER OF ARIZONA, LLC and CHRISTOPHER AMATO ("Defendants") as follows:

### PARTIES

1. Life Saver Pool Fence Systems, Inc. ("Plaintiff" or "Life Saver") is a Florida Corporation with a place of business at 1085 SW 15TH Avenue, Suite E-#3, Delray Beach, FL 33444.

2. Upon information and belief, Pool Barrier of Arizona, LLC ("PBAZ") is a

Limited Liability Company organized under the laws of Arizona, with a place of business at 4903 E Michelle Dr., Scottsdale, AZ 85254.

3.      Upon information and belief, Christopher Amato ("Amato") is an individual and Member of Pool Barrier of Arizona LLC having a place of residence at 4903 E Michelle Dr., Scottsdale, AZ 85254.

## JURISDICTION AND VENUE

4.      This action arises under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.*, and the common law unfair competition laws of the State of Arizona.

5.      This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121(a).

6.      This Court has supplemental jurisdiction over Plaintiff's claims arising under Arizona state law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.      Personal jurisdiction over PBAZ exists, at least, because PBAZ is organized in and resides in Arizona and in this District, has engaged in ongoing placement of products and/or services into the stream of commerce for ultimate sale and distribution within this judicial district, and because some or all of the acts or events giving rise to this action occurred in this judicial district.

8.      Personal jurisdiction over Defendant Amato exists, at a minimum, because Amado resides in Arizona and in this District, has engaged in ongoing placement of

products and/or services into the stream of commerce for ultimate sale and distribution within this judicial district, and because some or all of the acts or events giving rise to this action occurred in this judicial district.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial District.

## FACTUAL ALLEGATIONS

### Life Saver and The Life Saver Trademarks

10.    Founded in 1987, Life Saver is a family owned and operated company based in Delray Beach, Florida, that manufactures and sells pool fences.

11.    Pool fences are specialized pool safety barriers placed around swimming pools and other water features to prevent unsupervised access by people who cannot swim, especially children.  Pool Fences sold by Plaintiff and others typically consist of vertical poles mounted to concrete pool decking with unclimbable fabric panels stretched between the poles.

12.    Life Saver's pool fences are recommended and approved by national and local governments, not only in the United States, but also around the world. Life Saver employs rigorous third-party testing to ensure its pool fences adhere to strict international standards, and Life Saver pool fences have consistently exceeded all pool barrier code requirements throughout United States, Canada, Mexico, Europe, Asia and the Middle East.

13.    Because of its commitment to excellence, every Life Saver pool fence is backed by a one-hundred-year warranty.

14.    Life Saver manufactures its pool fence products in the U.S., and distributes them across the U.S., through a network of dealers and franchisees.  Life Saver, through its

3

dealers and franchisees, sells its pool fence products in Arizona and in 15 countries spanning five continents around the world.

15.    Life Saver sells, and has sold, its pool fences under a variety of federally registered and common law trademarks.

16.    Since its founding in 1987, Life Saver has sold its goods, including pool fence products, under the word mark LIFE SAVER.  Life Saver has sold goods under the LIFE SAVER mark throughout the country, including in the State of Arizona, through its dealer and franchisee network.

17.    Life Saver also sells and has sold its pool fence products under a variety of common law and federally registered LIFE SAVER formative design marks.

18.    Plaintiff owns and conducts business under the mark shown in U.S. Trademark Registration No. 5766827 ("the '827 registration"), a valid and subsisting U.S. trademark registration on the Principal Register.  The application that matured into the '827 registration was filed on February 13, 2018, for the mark LIFE SAVER POOL FENCE (shown below) in connection with: "[n]on-metal solar powered lights that attach to pool fencing poles" in International Class 011; "removable non-metal mesh safety pool fencing, namely, barrier fencing that blocks swimming pool entry and provides an extra layer of protection intended to prevent children from entering swimming pools without supervision; pool fencing accessories, namely, plastic ground caps that cover pool fencing pole holes in pool decking when the pool fencing is removed, plastic ground sleeves that are inserted into pool fencing pole holes drilled in pool decking for allowing pool fencing poles to be inserted into the pool decking" in International Class 019; and "plastic hooks

for use as pool fence hangers, namely, plastic hooks that attach to pool fencing poles for hanging towels, clothes, life preservers and other items on pool fencing" in International Class 020.



19.    The mark shown in the '827 registration was first used in commerce by July 1, 2013.

20.    A true and correct copy of the registration certificate for the '827 registration is attached hereto as **Exhibit A**.

21.    The '827 registration is incontestable under 15 U.S.C. § 1065.

22.    Plaintiff also owns U.S. Trademark Registration No. 2915855 ("the '855 registration"), a valid and subsisting U.S. trademark registration on the Principal Register. The application that matured into the '855 registration was filed on December 15, 2003, for the mark LIFE SAVER COMMITTED TO MAKING YOUR HOME A SAFER PLACE FOR CHILDREN (shown below) in connection with "[n]on-metal wire fencing for swimming pools" in International Class 019.

23.    The mark depicted in the '855 registration was first used in commerce by March 15, 1991.

24.    A true and correct copy of the registration certificate for Plaintiff's '855 registration is attached hereto as **Exhibit B**.

25.    The '827 registration incontestable under 15 U.S.C. § 1065.

26.    Plaintiff also owns common law rights in the "drop-and-lock design" mark (shown below) by virtue of Plaintiff's long-standing and continuous use of the mark in interstate commerce and in Arizona with, among other things, pool fences.



27.    Additionally, Plaintiff also owns common law rights in the blue and orange colors used in connection with some or fall of the aforementioned marks, and apart from those marks, by virtue of Plaintiff's long-standing and continuous use of these colors in interstate commerce and in Arizona with, among other things, pool fences.

28.    By virtue of its longstanding, continuous and exclusive use of the LIFE SAVER word mark, the drop-and-lock design mark, and the colors blue and orange ("the common law Life Saver marks"), the common law LIVE SAVER marks have achieved

secondary meaning as signifiers for Life Saver's goods throughout the United States, including in Arizona.

29. Plaintiff's trademark rights arising from the facts and activities set forth in Paragraphs 18-28, are collectively referred to herein as the "LIFE SAVER Marks."

30. Plaintiff offers its products and services sold under the LIFE SAVER marks among other places, on a website associated with the domain https://poolfence.com/.

31. Plaintiff also sells its LIFE SAVER branded products through a vast authorized dealer network, including authorized dealers in Arizona such as Secure Swim, LLC, which advertises LIFE SAVER branded products on its website https://www.secureswimfence.com/.

32. Plaintiff's LIFE SAVER Marks have achieved strength and wide public recognition as a result of extensive and continuous use by Plaintiff and/or its affiliates, licensees, and has been featured on television programs such as ABC News, Good Morning America, Extreme Makeover Home Edition, NBC News, NBC Today, and The Doctors, and in periodicals such as Forbes.

33. As a result of substantial sales and extensive advertising and promotion, Plaintiff has established valuable goodwill in the LIFE SAVER Marks. The relevant purchasing public has come to associate the LIFE SAVER Marks with Plaintiff and to know the LIFE SAVER Marks as an indicator of source.

34. Over the past thirty-eight (38) years, Plaintiff has invested substantial time, money, and effort in developing consumer recognition and awareness of the LIFE SAVER Marks. Specifically, Plaintiff has spent extensively on the advertisement and promotion of

goods and services sold under the LIFE SAVER Marks.  As part of its brand investment, Plaintiff advertises its goods and services online through its website, as well as through social media platforms such as TikTok, Instagram, Facebook, and YouTube.  Additionally, each of Plaintiff's authorized retailers also separately market and advertise Life Saver's products through local channels.

35.     The LIFE SAVER Marks are strong and entitled to a wide scope of protection.

**Life Saver's Acquisition of the Pool Barrier brand**

36.     On information and belief, on or about May 9, 1994, Pool Barrier, Inc., was organized in Florida.  Pool Barrier, Inc. ("Pool Barrier"), sold pool barrier products of the sort that compete with those sold by Life Saver.

37.     On information and belief, on June 17, 2002, Pool Barrier applied to the U.S. Patent and Trademark Office to register the POOL BARRIER design mark (shown below) for "removable metal fencing".



38.     On July 8, 2003, the U.S. Patent and Trademark Office registered the POOL BARRIER design mark and issued U.S. Trademark Registration No. 2734315 ("the '315 registration").  A copy of the '315 registration is attached as **Exhibit C**.

8

39.     On information and belief, from the time of its founding to 2011, Pool Barrier used, in interstate commerce, the word mark POOL BARRIER and the design trademark depicted in the '315 registration to sell pool fencing and barrier products, and established secondary meaning in these marks through this long period of exclusive use.

40.     Collectively, the POOL BARRIER word mark and the design mark that is depicted in the '315 registration will be referred to herein as "the POOL BARRIER Marks".

41.     In 2011, Life Saver, then already one of largest pool fence companies in the U.S., acquired Pool Barrier, Inc., becoming the largest pool fence company in the world.

42.     As part of its acquisition of Pool Barrier, Life Saver acquired ownership of the POOL BARRIER Marks, all goodwill associated therewith, and the exclusive right to use and/or license the use of the POOL BARRIER Marks.

43.     Life Saver owns the '315 registration, which is incontestable under 15 U.S.C. § 1065.

44.     Since its acquisition of Pool Barrier, Life Saver has used and uses the POOL BARRIER Marks to sell pool fence and related products, including through its franchisee and distributor networks, in interstate commerce, including in Arizona.

**Defendants Lose Their Life Saver Dealer Status**

45.     On information and belief, on or about April 26, 2008, Amato entered into an Authorized Dealer Agreement ("the Pool Barrier Dealer Agreement") with Pool Barrier, Inc.  The Pool Barrier Dealer Agreement is attached as **Exhibit D**.

46.     The Pool Barrier Dealer Agreement incorporated Standard Terms and

Conditions of Sale for Pool Barrier™ Products ("the Pool Barrier T&Cs"), attached as part of Exhibit D.

47.    Under paragraph 17 of the Pool Barrier T&Cs, Amato received a non-exclusive license to use Pool Barrier's trademarks in connection with the sale of Pool Barrier products.

48.    Under paragraph 17 of the Pool Barrier T&Cs, Amato was prohibited from using Pool Barrier's trademarks in connection with the sale of non-Pool Barrier goods.

49.    Under paragraph 17 of the Pool Barrier T&Cs, Amato's right to use Pool Barrier's trademarks ceased upon termination of the Pool Barrier Dealer Agreement, after which, Amato agreed to make no further use of Pool Barrier's trademarks.

50.    On information and belief, on or about May of 2008, Chris Amato organized PBAZ to sell pool fence products purchased from Pool Barrier, Inc., in Arizona, under the POOL BARRIER Marks and pursuant to the Pool Barrier Dealer Agreement.

51.    Pursuant to its purchase of Pool Barrier, Inc., the rights, obligations and benefits of Pool Barrier, Inc. under the Pool Barrier Dealer Agreement with Amato transferred to Life Saver as Pool Barrier, Inc.'s successor.

52.    Life Saver terminated the Pool Barrier Dealer Agreement with Defendants on March 29, 2023, by email.  The email terminating the Life Saver Dealer Agreement is attached as **Exhibit E**.

53.    Post-Termination of the Pool Barrier Dealer Agreement, Defendants lost the right to use any Life Saver trademark and/or the right to hold themselves out as authorized sellers of Life Saver or Pool Barrier products.

**Defendants' Infringing Use of Plaintiff's Marks.**

54.    PBAZ is a direct competitor of Plaintiff in that, at least, PBAZ sells mesh pool fences and child pool fences.

55.    PBAZ does not sell any products purchased from Life Saver or from authorized manufacturers or dealers of Life Saver products.

56.    PBAZ maintains a website at the URL https://poolbarrieraz.com/ ("the website") through which Defendant markets and sells Defendant's pool fence products.

57.    The website URL is confusingly similar to Life Saver's POOL BARRIER word mark.

58.    On the website, PBAZ uses a reproduction of the POOL BARRIER design mark, as pictured in Plaintiff's '315 registration and as shown below.



59.    On the website, at the URL https://poolbarrieraz.com/why-us/, PBAZ has posted a video produced by Life Saver ("the video"), which touts the advantages of Life Saver's products, and which is used by Life Saver to advertise Life Saver's products.

60.    The video displays Life Saver's lock-and-drop design mark, Life Saver's orange and blue color scheme, and the business name Life Saver Pool Fence, Inc., which incorporates the LIFE SAVER word mark.

61.    The video also reproduces entirely and without alteration the mark depicted in Plaintiff's '827 registration.

62.    Some of these uses of Plaintiff's marks in the video are shown in the screen shots from the video reproduced below.

# Why Choose Pool Barrier of Arizona?

We have the safest, strongest and most reliable pool fencing in Arizona. Want to learn why? Watch the video below to understand what makes our pool fence product far superior than our competition!





63. The video describes and shows testing performed by Life Saver employees and a third-party expert to compare the strength of Life Saver's "solid performance pole" to competing products.

64. The presence of the video on PBAZ's website falsely and confusingly suggests to the public that PBAZ sells Life Saver products, when this is not the case.

65. On information and belief, PBAZ reinforces this confusion by displaying photographs of Life Saver products on PBAZ's website.

66. On information and belief, at the URL https://poolbarrieraz.com/products/mesh-pool-fence/, PBAZ displays a photograph of Life Saver's solid poles, the same poles tested in the video. This is shown below.



https://poolbarrieraz.com/products/mesh-pool-fence/

## Mesh Pool Fence Poles



The poles of our fences are the strongest in the industry. They are the best available in the market. The solid pole construction has 1/8" solid, tough aluminum exterior wall.

The solid aluminum core can only be bent, but you can never break it! Aluminum gives excellent strength besides resisting environmental pollution.

The poles are given a powder coat finish that will never rust. They are made to be resistant to changing weathers. So they look brand new even after years! This finish make the poles look attractive besides ensuring durability.

67.     Upon information and belief, both PBAZ and Amato have misrepresented to potential customers that Defendants are a source of Life Saver products.  Attached as **Exhibit F** is a text message exchange between, on information and belief, Amato and a potential pool fence customer.  In the text message, Amato falsely claims to sell Life Saver products.

68.     Upon information and belief, Amato has personally participated in, authorized and directed PBAZ to engage in the unauthorized and infringing uses of Plaintiff's trademarks complained of herein.

69.     Upon information and belief, Defendants continue to use the LIFE SAVER Marks in U.S. commerce in connection with the marketing and sale of pool fences that compete directly with those products sold by Plaintiff under its LIFE SAVER Marks.

70.     Upon information and belief, Defendants advertise, offer for sale, and/or sell their goods and/or services through its website, https://poolbarrieraz.com/, which incorporates the LIFE SAVER Marks.

71.     Upon information and belief, Defendants utilize Plaintiff's social media marketing materials, including the video, which was produced by Plaintiff and features the LIFE SAVER Marks, under the "Why Us" section of its website: https://poolbarrieraz.com/why-us/.

72.     Upon information and belief, Defendants have and continue to represent to their customers that they sell the LIFE SAVER branded products manufactured by Plaintiff.

73.     Plaintiff was only recently made aware of Defendants' infringing use.

15

74. Plaintiff's rights in its LIFE SAVER Marks predate Defendants' use of the same.

75. The goods and services offered by Defendants under the LIFE SAVER Marks are directly competitive with, overlap with, and are at least related to the goods and services offered by Plaintiff under the LIFE SAVER Marks.

76. Plaintiff did not authorize Defendants' use of the LIFE SAVER Marks.

77. The parties use identical marketing channels to advertise the goods and services sold under the LIFE SAVER Marks, for example, through social media channels such as Facebook and their respective websites.

78. The likely customers of goods and services provided by parties under their LIFE SAVER Marks are the same.

79. Defendants' use of the LIFE SAVER and POOL BARRIER Marks, when used in connection with Defendants' goods and services, is likely to cause confusion, mistake, or deception of the relevant trade and public. Consumers will likely believe that Defendants' goods and services are in some way associated with or connected with, or approved or authorized by Plaintiff, when this is not the case.

## <u>COUNT I</u>

**Federal Trademark Infringement**

**(15 U.S.C. § 1114(1))**

**(Lanham Act § 32)**

80. Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs as if fully set forth herein.

16

81.    Plaintiff owns valid and existing rights in the LIFE SAVER Marks and the POOL BARRIER Marks.

82.    Defendants use the LIFE SAVER Marks and the POOL BARRIER Marks, without Plaintiff's authorization, in interstate commerce in connection with Defendants' promotion of their goods and services.

83.    Defendants' unauthorized use of the LIFE SAVER Marks and the Pool Barrier Marks is likely to cause confusion and mistake among consumers and others as to the source, origin, or sponsorship of Defendants' goods and services sold or offered for sale under the LIFE SAVER Marks and the POOL BARRIER Marks.

84.    Defendants' unauthorized use of the registered LIFE SAVER Marks and the registered POOL BARRIER Marks in interstate commerce constitutes trademark infringement under 15 U.S.C. § 1114(1).

85.    On information and belief, Defendants' adoption and use of the LIFE SAVER Marks and the POOL BARRIER Marks was done with knowledge of Plaintiff's rights to the same at least because Plaintiff's long history of use of the LIFE SAVER Marks and the POOL BARRIER Marks.

86.    Defendants' unauthorized use of the LIFE SAVER Marks and the POOL BARRIER Marks is a knowing, willful, and intentional violation of Plaintiff's rights.

87.    Defendants have engaged in unauthorized use of spurious marks, which are identical with, or substantially indistinguishable from, Plaintiff's registered marks, namely, the mark depicted in Plaintiff's '827 registration and '327 registration, in connection with the sale of the same types of goods sold by Plaintiff.

17

88.     Defendants' activities constitute counterfeiting under 15 USC § 1127.

89.     Defendants' infringement diminishes the value of Plaintiff's LIFE SAVER Marks and POOL BARRIER Marks, and the goodwill and business reputation associated therewith.  Further, Defendants' infringement, unless restrained, will cause great and irreparable injury to Plaintiff and to the recognition and goodwill represented by the LIFE SAVER Marks and the POOL BARRIER Marks, in an amount that cannot be ascertained at this time, leaving Plaintiff with no adequate remedy at law.

90.     By reason of the foregoing, Plaintiff is entitled to injunctive relief restraining Defendants from any further infringement of Plaintiff's marks, and also is entitled to recover Defendants' profits, actual damages, enhanced profits and damages (including trebling), costs, reasonable attorneys' fees, interest, and/or statutory damages under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II

### Federal Unfair Competition and False Designation of Origin

### (15 U.S.C. § 1125(a))

### (Lanham Act § 43(a))

91.     Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs as if fully set forth herein.

92.     Plaintiff uses and owns the LIFE SAVER Marks and POOL BARRIER Marks in connection with its sale of, among other things, goods and services related to pool fences.  The LIFE SAVER Marks and POOL BARRIER Marks are inherently distinctive and have also acquired secondary meaning as a designation of source for

Plaintiff.

93.     In connection with its promotion and sale of their own directly competing and overlapping goods, Defendants use interstate commerce the LIFE SAVER Marks and the POOL BARRIER Marks.  Defendants' use of Plaintiff's marks is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship, or affiliation of the parties' products and services.  Consumers seeing software goods and services sold or offered for sale under Plaintiff's marks in the marketplace are likely to believe those products and services are sponsored by, associated with, or otherwise affiliated with Plaintiff.

94.     Defendants' use of Plaintiff's marks constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

95.     Defendants' use of Plaintiff's marks is a knowing, willful, and intentional violation of Plaintiff's rights.

96.     Defendants' act of false designation of origin, unless restrained, will cause great and irreparable harm to Plaintiff and to the business goodwill represented by Plaintiff's marks, in an amount that cannot be ascertained at this time, leaving Plaintiff no adequate remedy at law.

97.     By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendants, restraining Defendants from any further acts of false designation of origin, and also is entitled to recovery of Defendants' profits, actual damages, enhanced profits and damages (including trebling), costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125.

## COUNT III

### Common Law Trademark Infringement

98.    Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs as if fully set forth herein.

99.    Plaintiff has used and continues to use the LIFE SAVER Marks and POOL BARRIER Marks in connection with its sale of pool fences.

100.    Plaintiff's use of Plaintiff's marks in commerce has been continuous and, until the events discussed in this Complaint, exclusive in Arizona.

101.    Defendants, by adopting the LIFE SAVER and POOL BARRIER Marks for competing pool fences, have caused and continue to cause likely and actual confusion in the marketplace as to the origin of pool fences provided by Plaintiff.

102.    Defendants' acts constitute common law trademark infringement under the laws of the State of Arizona.

103.    Defendants' infringement is intentional, willful, and or in reckless disregard of Plaintiff's rights in the LIFE SAVER and POOL BARRIER Marks.

104.    By infringing Plaintiff's LIFE SAVER and POOL BARRIER Marks, Defendants have caused Plaintiff to suffer and, unless enjoined by this Court, continues to cause Plaintiff to suffer substantial injury, including lost profits, for which Plaintiff is entitled to damages adequate to compensate Plaintiff for Defendants' infringement.

105.    If Defendants' infringement is not enjoined, Plaintiff will suffer irreparable harm that cannot adequately be compensated by a monetary award.

**COUNT IV**

**Anti-cybersquatting Consumer Protection Act**

**(15 U.S.C. § 1125(d))**

**(Lanham Act § 43(d))**

106.    Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs as if fully set forth herein.

107.    Plaintiff is the exclusive owner of the POOL BARRIER word mark. Additionally, the POOL BARRIER word mark is highly distinctive and was distinctive at the time the Pool Barrier Dealer Agreement was terminated.

108.    Upon information and belief, Defendants use the domain www.poolbarrieraz.com, which incorporates Plaintiff's POOL BARRIER word mark in its entirety, with the bad faith intent to profit from the unauthorized use of the POOL BARRIER word mark and the goodwill associated therewith.

109.    Defendants have no intellectual property right in or to the POOL BARRIER word mark.

110.    Defendants' actions constitute willful cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

111.    Plaintiff has no adequate remedy at law, and the bad faith use of the www.poolbarrieraz.com domain name has caused, is causing, and is likely to cause substantial and irreparable injury to the public and to Plaintiff.

## DEMAND FOR JURY TRIAL

112.    Pursuant to Federal Rule of Civil Procedure 38(b) and Plaintiff demands a trial by jury on all issues so triable as to the above.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that this Court enter an Order granting it the following relief:

A.    Enter a judgment that Defendants are liable to Plaintiff for infringement, false designation of origin, cybersquatting and counterfeiting under 15 U.S.C. §§ 1114(1), 1125(a), 1125(d) and 1127;

B.    Enter a judgment that Defendants are liable to Plaintiff for trademark infringement and unfair competition under Arizona common law;

C.    Enter an order pursuant to 15 U.S.C. § 1116 preliminarily and permanently enjoining Defendants and their agents, representatives, employees, assigns, and all persons acting in concert or privity with them, from maintaining, disseminating, reproducing, promoting, distributing or otherwise using Plaintiff's marks or any marks confusingly similar thereto, as a whole or a part of any mark, product, service, advertising, promotion, configuration, or design;

D.    Enter an order pursuant to 15 U.S.C. § 1116 preliminarily and permanently enjoining Defendants and their agents, representatives, employees, assigns, and all persons acting in concert or privity with them, from doing any act or thing likely to induce the mistaken belief that Defendants' goods and/or services are in any way affiliated, connected

or associated with Plaintiff or its goods and/or services, or from doing any other act or thing likely to cause confusion with respect to Plaintiff's marks;

E.    Enter a judgment directing Defendants to deliver up to Plaintiff for destruction or other disposition, within thirty (30) days or entry of final judgment, any and all infringing materials, in any medium, including but not limited to, marketing materials, print advertisements, and promotional videos used by or in Defendants' possession that display: (1) Plaintiff's marks; and/or (2) any mark that is confusingly similar to Plaintiff's marks;

F.    Enter a judgment directing Defendants and their directors, officers, agents, employees, successors and assigns, and all individuals acting in concert or participation with them to stop using, linking to, selling, offering for sale, operating and/or hosting websites, or exercising control over the www.poolbarrieraz.com or any other confusingly similar domain name that is used or could be used to advertise, market, sell, and/or offer for sale infringing goods and/or services and transfer the Infringing Domain to Plaintiff;

G.    Order Defendants and their directors, officers, agents, employees, successors and assigns, and all individuals acting in concert or participation with them to transfer ownership of the www.poolbarrieraz.com domain name to Plaintiff.

H.    Enter a judgment that Defendants' trademark infringement, false designation of origin, dilution, and deceptive trade practices have been willful;

I.    Order Defendants to file and serve a report in writing, and under oath, setting forth the manner and form in which it has complied with the Court's order and injunction;

J.    Order Defendants to pay Plaintiff any damages attributable to Defendants'

23

infringement, false designation of origin, dilution, and deceptive trade practices, and to account for all gains, profits, and advantages derived therefrom, and such damages authorized by law, including under 15 U.S.C. § 1117;

K.    Award damages for counterfeiting, including triple the Defendants' profits or actual damages, whichever is greater, attorney fees, prejudgment interest, or statutory damages, at the election of Plaintiff, pursuant to and fees or statutory damages pursuant to 15 U.S.C. § 1117(b) and (c);

L.    Declare this to be an exceptional case and order Defendants to pay Plaintiff its attorneys' fees and costs, as well as treble damages, pursuant to 15 U.S.C. § 1117 and any other applicable statutes or laws, including pre- and post-judgment interest thereon;

M.    Award Plaintiff its costs, pre-judgment interest, and post-judgment interest; and

N.    Award Plaintiff such other and further relief as the Court deems just and proper.

Dated: May 22, 2026                    QUARLES & BRADY LLP


By:    _____/Michael J. Curley/_____
       Michael J. Curley
       Attorneys for Plaintiff Life Saver Pool Fence
       Systems, Inc.

24